# In the United States Court of Federal Claims

No. 18-727C
(Filed: October 7, 2021)
**FOR PUBLICATION**

******************************************

ROBERT BRIDGES, *et al.*,         *

                                *

              Plaintiffs,     *

                                *

v.                                *

                                *

THE UNITED STATES,        *

                                *

              Defendant.    *

                                *

******************************************

*David Ricksecker*, McGillivary Steele Elkin LLP, Washington, D.C., for Plaintiffs. With him on briefs was *Gregory K. McGillivary*, McGillivary Steele Elkin LLP, Washington, D.C.

*Robert R. Kiepura*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. for Defendant, United States. With him on briefs were *Joseph H. Hunt*, Assistant Attorney General, *Jeffrey Bossert Clark*, Acting Assistant Attorney General, *Ethan P. Davis*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Reginald T. Blades, Jr.*, Assistant Director, *Lauren S. Moore*, Trial Attorney, and *Jana Moses*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C, as well as *Kathleen Haley Harne*, Assistant General Counsel, Employment Law Branch, Office of General Counsel, Federal Bureau of Prisons, Washington, D.C.

## OPINION AND ORDER

Plaintiffs — current and former Federal Bureau of Prisons employees at Federal Correctional Institution Milan ("FCI Milan" or "the Prison") — seek overtime compensation under the Fair Labor Standards Act ("FLSA") for time spent traveling between their regularly scheduled shifts at the Prison and voluntary overtime shifts guarding inmates at area hospitals. Plaintiffs also seek compensation for mileage accumulated on their personal vehicles in transit between regular and overtime shifts. The parties' cross-motions for summary judgment are ripe for disposition.[1]

---

[1] Pls.' Mot. for Partial Summ. J. (ECF 33) ("Pls.' Mot.") and Pls.' Mem. ISO Mot. for Partial Summ. J. (ECF 34) ("Pls.' Mem."); Def.'s Resp. to Pls.' Mot. for Partial Summ. J. & Cross-Mot. for Partial Summ.

There are no genuine disputes of material fact. Rather, the case turns on how the relevant regulations define Plaintiffs' workday. Those regulations rule out compensation for the travel time at issue. Accordingly, Defendant's motion is **GRANTED,** and Plaintiffs' motion is **DENIED**. The case is **DISMISSED**.

## BACKGROUND

FCI Milan inmates with medical needs that cannot be handled at the Prison are admitted to nearby hospitals, where correctional workers guard the inmates at all times. Pls.' Mem. App. at PA9–10.[2] Hospital posts are staffed by Prison employees on overtime assignments. PA9.

Work schedules at the Prison and the relevant hospitals are organized into shifts. At the hospitals where FCI Milan inmates are most commonly treated, shifts are usually staggered an hour later than Prison shifts. PA17, PA21, PA161–64, PA272, PA274, PA277. The hospitals are approximately 15 miles away from FCI Milan, or about a 20-minute drive. PA13, PA18, PA40. As a result, Prison workers doing hospital assignments typically complete their Prison shift, then travel to a hospital for an overtime shift. PA21.  Other arrangements for scheduling Prison and hospital shifts are possible, *see, e.g.*, PA22–23, but the parties agree that the legal analysis is the same.

Hospital and Prison shifts are both tracked in the Prison's roster. PA31, PA41, PA101. But they are scheduled differently. FCI Milan employees normally bid on quarterly posts at the Prison, with posts scheduled two weeks in advance. PA9, PA28. Hospital shifts are not assigned in that way. PA8–9, PA28, PA101, PA114. Instead, employees voluntarily sign up for overtime availability and leave a phone number "for management to call." PA250, PA 253. When overtime shifts need to be assigned, the lieutenant on duty contacts employees by phone according to their order on a rotation. PA18, PA28, PA 250, PA253. Employees can accept or decline the overtime when contacted. If necessary, the Prison assigns workers to mandatory hospital overtime, but employees usually volunteer. PA22.

Employees who work a shift at FCI Milan and then a volunteer overtime shift at a hospital are compensated for the time they spend at their posts, but not for their travel time between work locations. In contrast, Prison employees *are* paid for travel when they are assigned to mandatory overtime shifts, or when they must travel to a

---

J. on the Issue of Liability (ECF 38) ("Def.'s Resp. & Cross-Mot."); Pls.' Reply & Opp. to Def.'s Mot. for Summ. J. (ECF 40) ("Pls.' Reply & Opp."); Def.'s Reply to Pls.' Resp. to Def.'s Cross-Mot. for Partial Summ. J. (ECF 41) ("Def.'s Reply"). I heard oral argument on June 11, 2021. Tr. of Oral Arg. (ECF 46).

[2] Further citations to Plaintiffs' Appendix will be to "PA." Neither party has submitted declarations authenticating the exhibits submitted in support of the cross-motions, but nor has either party objected to the other's failure to do so. RCFC 56(c)(2).

hospital during their regular Prison shift. PA22, PA50. Employees are also compensated when they transport prisoners or drive a government vehicle to the hospital. PA19, PA33, PA42, PA100.

Overtime for Prison-to-hospital travel has been a matter of controversy at FCI Milan before. Three memoranda of understanding between FCI Milan and the Prison employees' union (the "MOUs") contain language covering overtime assignments: "[I]f the assignment is located away from the official duty station within the local commuting area (i.e. outside hospital), time spent traveling will not be considered hours of work, unless the employee is required to drive a government vehicle or perform work while traveling." Def.'s Resp. & Cross-Mot. Exh. B at 1 (ECF 39-2); PA251, PA254.

## DISCUSSION

### I. Jurisdiction

The United States Court of Federal Claims has jurisdiction under the Tucker Act to adjudicate "any claim against the United States founded either upon … any Act of Congress or any regulation of an executive department … in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Because the Tucker Act is "a jurisdictional statute [that] does not create any substantive right enforceable against the United States for money damages," *United States v. Testan*, 424 U.S. 392, 398 (1976) (citing *Eastport S.S. Corp. v. United States*, 178 Ct. Cl. 599, 605–07 (1967)), parties asserting Tucker Act jurisdiction must "identify a substantive right for money damages against the United States, separate from the Tucker Act itself." *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004). That entails identifying a "money mandating" source of law, *i.e.*, a statute or regulation that "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained and is reasonably amenable to the reading that it mandates a right of recovery in damages." *Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299, 1307 (Fed. Cir. 2008) (quotes and citations omitted) (quoting *United States v. Mitchell*, 463 U.S. 206, 217 (1983), and *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473 (2003)).

Plaintiffs' claims for uncompensated travel time are based on FLSA, which is a money-mandating source of law. *See Abbey v. United States*, 745 F.3d 1363, 1369 (Fed. Cir. 2014). Their claims for mileage reimbursement rely on other sources of law that require non-discretionary payment by the United States to particular recipients. *See* 5 U.S.C. § 5704(a)(1) ("[A]n employee who is engaged on official business for the Government is entitled to a rate per mile established by the Administrator of General Services, instead of the actual expenses of transportation, for the use of a privately owned automobile when that mode of transportation is authorized or approved as

more advantageous to the Government."); Program Statement 2200.04 at 23–24, *BOP Temporary (TDY) Travel Regulation* (Dec. 1, 2016) (ECF 49-1) (providing that employees "must receive a mileage reimbursement" for travel in personal vehicles when requirements are met). Those terms are money-mandating as well. *See, e.g.*, *Jan's Helicopter Serv., Inc.*, 525 F.3d at 1307.[3] The Court therefore has jurisdiction over both claims.

"[T]he special statute of limitations governing the Court of Federal Claims requires" that timeliness be considered a jurisdictional question. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 132 (2008). FLSA claims must be brought within two years of alleged violations, or within three years of willful violations. 29 U.S.C. § 255(a). Plaintiffs allege that the challenged payment practices have continued "on an ongoing basis to date," Am. Compl. ¶ 7 (ECF 2), and the summary judgment record bears that out. Plaintiffs' claims are therefore timely.

## II. Merits

### A. Summary Judgment Standard

A party seeking summary judgment must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). "[A]ll evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the nonmoving party." *Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Cross-motions for summary judgment should be evaluated as independent motions. "[T]he court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose

---

[3] In *Agwiak v. United States*, the Federal Circuit held that a different statute providing that given individuals were "entitled" to money was money-mandating. 347 F.3d 1375, 1380 (Fed. Cir. 2003). Likewise, as a rule courts treat the word "must" as mandatory. *See O'Farrell v. Dep't of Def.*, 882 F.3d 1080, 1085 (Fed. Cir. 2018) (referring to word "must" as a "mandatory term"), and *K-Con, Inc. v. Sec'y of Army*, 908 F.3d 719, 725 (Fed. Cir. 2018) (similar) (both citing *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1977 (2016)). "[U]se of the word 'shall' generally makes a statute money-mandating," *see Greenlee Cnty., Ariz. v. United States*, 487 F.3d 871, 877 (Fed. Cir. 2007) (quoting *Agwiak*, 347 F.3d at 1380), and "must" means the same thing here. *See J.H. Miles & Co. v. United States*, 3 Cl. Ct. 10, 13 (1983) (defining "shall" as "must"); *Contreras v. United States*, 64 Fed. Cl. 583, 592–93 (2005) (holding a statute *not* money mandating because it did not use the terms "'shall' or 'must,' which very obviously connote[] mandatory action"), *aff'd*, 168 F. App'x 938 (Fed. Cir. 2006).

motion is under consideration." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987) (citing *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 313–14 (2d Cir. 1981)). "[T]he court is not relieved of its responsibility to determine the appropriateness of summary disposition in a particular case," even if the parties agree that no material facts are disputed and summary disposition is appropriate. *Williams v. United States*, 144 Fed. Cl. 218, 230 (2019) (citing *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 911 (Fed. Cir. 1988)).

## B. Analysis

FLSA requires compensation for hours worked, including work "suffer[ed] or permit[ted]" by the employer. 29 U.S.C. §§ 203(g), 207(a)(1); *see also* 5 C.F.R. § 551.401(a). The Portal-to-Portal Act limits that mandate with a general rule excluding time spent in travel to and from work:

> [N]o employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended … on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after May 14, 1947—
>
> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a). Plaintiffs argue, rather, that travel between FCI Milan and volunteer overtime shifts at a hospital occurs within a "continuous workday" — running from the start of the regular shift to the end of the overtime shift — during which all Plaintiffs' time is compensable work. Pls.' Mem. at 14. To succeed, Plaintiffs must show that Office of Personnel Management ("OPM")[4] regulations establish a

---

[4] Except as to employees of certain named agencies, "the Director of the Office of Personnel Management is authorized to administer the provisions of [FLSA] with respect to any individual employed by the United States[.]" *See* 29 U.S.C. § 204(f)); *see also* 5 C.F.R. §§ 551.102, 551.103. OPM is required to do so consistently with "the rulings, regulations, interpretations, and opinions of the Secretary of Labor which are applicable in other sectors of the economy," *see Billings v. United States*, 322 F.3d 1328, 1333 (Fed. Cir. 2003) (quoting Fair Labor Standards Amendments of 1974, H.R. REP.

"workday" mandating compensation for travel between the Prison and overtime shifts at hospitals. That argument is inconsistent with the relevant regulations, and therefore fails.[5]

First, Plaintiffs' "continuous workday" theory does not account for how OPM regulations treat non-work time during the workday. Plaintiffs rely heavily on a Department of Labor ("DOL") interpretation of FLSA providing that "[t]ime spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked." 29 C.F.R. § 785.38. But whatever that language might mean, DOL's interpretations do not govern Plaintiffs; OPM's do. An OPM regulation — which Plaintiffs ignore — uses different language:

> A preparatory or concluding activity that is not closely related to the performance of the principal activities is considered a preliminary or postliminary activity. Time spent in preliminary or postliminary activities is excluded from hours of work and is not compensable, *even if it occurs between periods of activity that are compensable as hours of work.*

5 C.F.R. § 551.412(b) (emphasis added). Far from establishing the "continuous workday" Plaintiffs envision, that regulation specifically excludes compensation for activities that are not "closely related" to an employee's principal activities, even during the course of a workday.[6]

---

No. 93–913, at 28 (1974), *reprinted in* 1974 U.S.C.C.A.N. 2811, 2837), and OPM regulations are invalid if they depart from the Secretary's official positions without justification, *see id.* at 1334; *see also Am. Fed'n of Gov't Employees v. Office of Pers. Mgmt.*, 821 F.2d 761, 770 (D.C. Cir. 1987); *Plaintiff No. 1 v. United States*, No. 19-1019C, 2021 WL 2283858, at *3 (Fed. Cl. May 20, 2021). Plaintiffs do not challenge the validity of OPM's regulations. Plaintiffs suggest in passing that the OPM regulations should be interpreted in light of Federal Personnel Manual Letter No. 551−10 (1976), *see* Pls.' Mem. at 22, but do not explain what the letter says or why it is entitled to deference in light of subsequent regulations.

[5] Plaintiffs concede that their mileage claim falls with their claim for uncompensated travel time. Tr. of Oral Arg. at 38. That is consistent with the relevant statute, which requires mileage compensation for employees "engaged on official business for the Government[.]" 5 U.S.C. § 5704(a)(1). Given that Plaintiffs do not perform any work during the travel time at issue, they plainly are not conducting official business. The statute is consistent with the superseded travel regulation Plaintiffs rely upon. *See* U.S. Department of Justice, Federal Bureau of Prisons Directive 2200.01 (May 5, 2000) (PA387). It also appears to be consistent with the current version of the regulation, Program Statement 2200.04, though Plaintiffs have forfeited any argument based on the new version to the extent it differs from the prior one. Therefore, Plaintiffs are not entitled to mileage reimbursement.

[6] That reading tallies with the underlying OPM definition of "workday," which provides that an employee's "hours of work" include "[a]ll time spent by an employee in the performance of [principal] activities," 5 C.F.R. § 551.411(a), and thus impliedly exclude other kinds of activities. Meals and rest breaks are governed by their own rules. 5 C.F.R. § 551.411(b), (c).

The parties appear to agree that a Prison employee's principal activity is guarding prisoners, whether at the Prison or a hospital. *See* Pls.' Mem. at 3–4; Def.'s Resp. & Cross-Mot. at 2–3; Def.'s Reply at 9. But under the Portal-to-Portal Act, travel to the place of work is generally separate from the work itself, *see IBP, Inc. v. Alvarez*, 546 U.S. 21, 41 (2005); 29 U.S.C. § 254(a), and Plaintiffs do not argue that their travel is "closely related" to guarding.[7] 5 C.F.R. § 551.412(b); *cf. Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27, 36 (2014) (explaining that in determining what activities are "integral and indispensable" to principal activities, the question is not "whether an employer *required* a particular activity" but what "productive work … the employee is *employed to perform*"). Plaintiffs pause their guarding responsibilities at the end of their Prison shifts, so even though they resume similar activities at the hospital, travel to the second worksite is "excluded from hours of work and is not compensable[.]" 5 C.F.R. § 551.412(b).

Plaintiffs argue that the "continuous workday" obliterates the distinction between principal activities and preparatory or concluding activities: Travel, in their view, "is actually part of the principal activities that are part [of] the continuous workday." Pls.' Reply & Opp. at 8. But that ignores the critical OPM regulation, which, again, *requires* distinguishing between "principal activities" and separate "preparatory or concluding" activities — even in the course of a workday. 5 C.F.R. § 551.412(b). Because Plaintiffs' travel falls in the latter category, the OPM regulation rules out compensation.

Second, Plaintiffs are also mistaken in their premise that OPM regulations define a "workday" that combines Prison and volunteer overtime shifts into a single continuous unit. Plaintiffs' travel occurs *outside* the workday, as OPM defines it. They would thus lose even if they were right that OPM regulations require compensation for all activities during a continuous workday. A close reading of the regulations shows.

OPM defines a "workday" as the time between the "commencement" and "cessation" of "the principal activities that an employee is engaged to perform on a given day[.]" 5 C.F.R. § 551.411(a); *see Van Buren v. United States*, 141 S. Ct. 1648, 1657 (2021) ("When a statute includes an explicit definition of a term, we must follow that definition, even if it varies from a term's ordinary meaning.") (quoting *Tanzin v. Tanvir*, 141 S. Ct. 486, 490 (2020) (quotes omitted)); *Tesoro Haw. Corp. v. United States*, 405 F.3d 1339, 1346 (Fed. Cir. 2005) (noting that "[w]e construe a regulation

---

[7] There are circumstances where travel is closely related to work. For example, time spent walking in essential protective equipment between a locker room and a factory floor is compensable. *IBP, Inc.*, 546 U.S. at 37. But the Portal-to-Portal Act distinguishes those cases from simply traveling to a work location, even at an employer's direction.

in the same manner as we construe a statute"). "Principal activities," in turn, "are the activities that an employee performs during his or her regularly scheduled administrative workweek (including regular overtime work)[.]" 5 C.F.R. § 550.112(a).[8] "Regularly scheduled administrative workweek" and "regular overtime work" have regulatory definitions as well, both of which underscore that the work must be "regularly scheduled." *Id.* The former means "the period within an administrative workweek … within which the employee is regularly scheduled to work." 5 C.F.R. § 550.103; 5 C.F.R. § 610.102 (similar language); *see also* 5 C.F.R. § 610.111 (prescribing agency authority to establish the workweek). The latter means "overtime work that is part of an employee's regularly scheduled administrative workweek." 5 C.F.R. § 550.103.

Reading those nested definitions together, it turns out that the bounds of an employee's "workday" depend not just on what he is doing, but on how his time is scheduled. The workday begins and ends with the employee's "principal activities," *see* 5 C.F.R. § 551.411(a), but "principal activities" by definition occur "during [a] regularly scheduled" work period, *see* 5 C.F.R. § 550.112(a). Work and closely related activities are still compensable when not regularly scheduled, *see* 29 U.S.C. § 203(g); *see also IBP, Inc.*, 546 U.S. at 33, but then they are not part of an employee's principal activities for purposes of defining a workday under OPM regulations. The "workday" is thus a "regularly scheduled" unit of time, excluding compensable work time that is not regularly scheduled.

It is important to acknowledge an alternative reading. It could be that although the activities an employee is regularly scheduled to perform are his "principal activities," the workday includes all the time he spends performing those activities, whether the time is "regularly scheduled" or not. That interpretation finds some support from the statute, caselaw, and DOL interpretations. *See IBP, Inc.*, 546 U.S. at 34 (noting that it is "unlikely … that Congress intended to create an intermediate category of activities that would be sufficiently 'principal' to be compensable, but not sufficiently principal to commence the workday"); *see also* 29 C.F.R. § 790.8 (DOL regulation defining "principal activities" without reference to regular scheduling). But when it comes to the OPM regulations — which, again,

[8] Principal activities also include "activities performed by an employee during periods of irregular or occasional overtime work authorized under [5 C.F.R.] § 550.111." 5 C.F.R. § 550.112(a). Plaintiffs argue that voluntary Prison overtime meets that definition. Tr. of Oral Arg. at 25. But the overtime authorization provisions of Section 550.111 implement the Federal Employees Pay Act ("FEPA"), which covers overtime that has been "officially ordered or approved." 5 U.S.C. § 5542(a); *see generally Doe v. United States*, 372 F.3d 1347 (Fed. Cir. 2004). Those aspects of Section 550.111 are inapplicable to federal employees covered by FLSA's overtime provisions. *See* 5 C.F.R. § 550.101(c). And Plaintiffs have not presented a FEPA claim.

Plaintiffs do not challenge — that reading is inferior for at least two reasons. First, OPM has provided that "[i]n determining what activities constitute hours of work under the Act, there is generally a distinction based on whether the activity is performed by an employee during regular working hours or outside regular working hours." 5 C.F.R. § 551.421(a). For example, OPM regulations explicitly tie compensation for travel time to whether the travel is during "regular working hours." 5 C.F.R. § 551.422 (discussed below); *see also* 5 C.F.R. § 550.112(g). It is not surprising that non-regularly scheduled activities would also be excluded from the definition of a "workday." Second, OPM defines principal activities to include "activities performed by an employee during periods of irregular or occasional overtime work authorized under [5 C.F.R.] § 550.111," but not *other* kinds of irregular overtime, such as volunteer hospital shifts. *See* 5 C.F.R. § 550.112(a). Several aspects of the OPM regulatory scheme, in other words, reinforce the conclusion that Plaintiffs' principal activities end with the regularly scheduled day, not when Plaintiffs ultimately stop guarding prisoners and go home.[9]

So how are the Prison shifts and voluntary hospital overtime shifts scheduled? Plaintiffs' counsel conceded at argument that the former are regularly scheduled, while the latter are not. Tr. of Oral Arg. at 25–26.[10] The record shows no genuine issue of fact on the subject, even drawing all inferences in Plaintiffs' favor. As discussed above, Prison employees bid on their regular posts quarterly. *See* PA9, PA95, PA270–79 (example of quarterly rosters that show an employee's shift during any given week). But with hospital overtime shifts, employees instead sign up on a list to receive overtime assignments. PA18. FCI Milan's Administrative Lieutenant testified that he does not include the hospital shifts when preparing the schedule two weeks in advance. PA28. The operations lieutenant running the day-to-day shift monitors for overtime assignments, which are offered *ad hoc* on a rotational basis. PA18, PA28, PA250, PA253.

The hospital shifts, in short, are not scheduled in the same way as the Prison shifts, and they are not "regular" in any plausible sense. Prison employees therefore do not perform their "principal activities," as that term is defined by regulation, when they work those shifts. 5 C.F.R. § 550.112(a). Their "principal activities" — and thus their "workday" — begin and end with the Prison shift. Thus, even if OPM regulations

---

[9] In any event, even if the alternative reading were better, Plaintiffs would still lose under 5 C.F.R. §§ 551.412 and 551.422.

[10] Defendant's counsel stated that both Prison and hospital shifts are scheduled and recorded through the same roster system, and expressed the view that both were part of the regularly scheduled workweek. Tr. of Oral Arg. at 50. But counsel also recognized that the actual scheduling process is different. *Id.* at 59. Even if the parties' counsel both conceded the same issue against their clients' interest, the record leaves no question that Plaintiffs' concession was correct.

established a continuous workday during which all time is compensable, *contra* 5 C.F.R. § 551.412(b), voluntary hospital overtime shifts would not be included within the workday. Travel between Prison shifts and hospital shifts is preliminary or postliminary to employees' principal activity, and so noncompensable.

Third, OPM has promulgated a regulation on compensability of travel time. For federal employees, "[t]ime spent traveling shall be considered hours of work if: [*inter alia*] [a]n employee is required to travel during regular working hours [or] … is required to drive a vehicle or perform other work while traveling[.]" 5 C.F.R. § 551.422(a)(1)–(2).[11] That provision also precludes Plaintiffs from recovering overtime.

Plaintiffs' travel is not during "regular working hours." "'[R]egular working hours' means the days and hours of an employee's regularly scheduled administrative workweek established under part 610 of this chapter." 5 C.F.R. § 551.421(a). And, as discussed above, "[r]egularly scheduled administrative workweek … means the period within an administrative workweek … within which the employee is regularly scheduled to work." 5 C.F.R. § 610.102; *see also* 5 C.F.R. § 550.103 (similar language). For the same reasons described above, the voluntary hospital shifts are not regularly scheduled, so time between the hospital shifts and the Prison shifts is not within Plaintiffs' "regular working hours." Section 551.422(a)(1) thus does not allow compensation.[12]

Nor is Plaintiffs' travel compensable as "work while traveling" under Section 551.422(a)(2). For OPM-regulated federal employees, "work" means "time spent by an employee performing an activity for the benefit of an agency and under the control or direction of the agency[.]" 5 C.F.R. § 551.401(a). Travel can certainly be work if it meets that description. Section 551.422(a)(2) mentions workers being "required to drive a vehicle," for example. As relevant here, Plaintiffs are in fact

---

[11] *See also* 5 C.F.R. § 550.112(g) ("Time in travel status away from the official duty-station of an employee is deemed employment only when: (1) It is within his regularly scheduled administrative workweek, including regular overtime work; or (2) The travel— (i) Involves the performance of actual work while traveling[.]"); 5 C.F.R. § 551.401(h) ("For the purpose of determining overtime pay for work in excess of 40 hours in a workweek under this part, time spent in a travel status is hours of work as provided in § 551.422 of this part and § 550.112(g) of this chapter or 5 U.S.C. [§] 5544, as applicable.").
[12] The parties argue at length over decisions by the Federal Labor Relations Authority ("FLRA") applying Section 551.422 and related regulations to fact patterns similar to this case. "FLRA decisions are entitled to deference because of the FLRA's expertise in the area of labor law" but should not be followed when "inconsistent with a statutory mandate or the congressional policy underlying a statute." *Albright v. United States*, 26 Cl. Ct. 1119, 1124 (1992), *aff'd*, 10 F.3d 790 (Fed. Cir. 1993) (citing *Bureau of Alcohol, Tobacco and Firearms v. FLRA*, 464 U.S. 89, 97 (1983), and *NLRB v. Brown*, 380 U.S. 278, 291–92 (1965)). Although the Court does not entirely endorse the FLRA's reasoning, its decisions reinforce the conclusions expressed in this Order.

compensated if they have to transport a prisoner to the hospital, PA100, or drive a government vehicle, PA108. But simply driving a personal vehicle from the location of a regular shift to a voluntary second shift is not of that description. It is not "for the benefit" of the Prison any more than other travel excluded from compensable work hours by the Portal-to-Portal Act.

Plaintiffs dispute whether Section 551.422 applies at all. Pls.' Mem. at 21. One portion of the regulation authorizes agencies to "prescribe a mileage radius of not greater than 50 miles to determine whether an employee's travel is within or outside the limits of the employee's official duty station for determining entitlement to overtime pay for travel under this part." 5 C.F.R. § 551.422(d). Plaintiffs argue that the regulation is wholly inapplicable to travel within 50 miles of the Prison, and stipulate that the travel at issue in this case is within that radius. Pls.' Mem. at 21. Some aspects of Section 551.422 do involve travel away from an employee's duty station, and so depend on how a duty station is geographically defined. *See* 5 C.F.R. § 551.422(a)(3)–(4), (b). Those provisions are inapplicable here. The parts of the regulation cited above, though, are not limited to duty stations and therefore govern Plaintiffs' entitlement to compensation for travel time. And none of them authorizes compensation for travel between the Prison and voluntary overtime shifts.[13]

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment is **DENIED**, and Defendant's cross-motion is **GRANTED**. The case is **DISMISSED**.

The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Stephen S. Schwartz
STEPHEN S. SCHWARTZ
Judge

---

[13] Plaintiffs' employment relationship with FCI Milan is also defined by their collective bargaining agreement — specifically, several memoranda of understanding addressing this very issue. Since 2011, the agreements have stated that travel between the Prison and an "outside hospital" is not compensable unless an employee is required to perform other work or drive a government vehicle. Def.'s Resp. & Cross-Mot. Exh. B at 1 (2011 MOU); *see also* PA251 (2015 MOU), PA254 (2017 MOU). The MOUs cannot diminish Plaintiffs' rights under FLSA, which are "nonwaivable" and therefore "take precedence over conflicting provisions in a collectively bargained compensation arrangement." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740–41 (1981) (collecting cases). But nor can an MOU obligate the government to pay more than Congress has authorized. *See* U.S. Const. art. I, § 9, cl. 7; 31 U.S.C. §§ 1341(a)(1)(A), 1342. Although the MOUs are more consistent with the government's litigation position, the parties have not shown that the MOUs resolve any of the underlying statutory and regulatory interpretation questions. I therefore interpret FLSA and the relevant regulations, not the MOUs.